COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


GILBERT EVERETT SCHILL, JR.

MEMORANDUM OPINION[*] BY
v.        Record No. 1636-96-2      JUDGE LARRY G. ELDER
                                        JUNE 10, 1997
NANCY JOAN LENAHAN SCHILL


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge


Donald K. Butler (Player B. Michelsen;
Morano, Colan & Butler, on briefs), for
appellant.

John F. Ames for appellee.


Gilbert Everett Schill (husband) appeals the trial court's awards of equitable distribution, spousal support and attorney fees. Nancy Joan Lenahan Schill (wife) appeals the trial court's award of equitable distribution and the omission of any decision regarding child support in its final decree. For the reasons that follow, we affirm in part, reverse in part, and remand.

The parties are familiar with the record and this memorandum opinion recites only those facts necessary to the disposition of the issues before the Court.

---

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

I.

EQUITABLE DISTRIBUTION

Husband asserts that the trial court made four errors in its award of equitable distribution. He contends that the trial court erred (1) when it classified all of his capital account with his law firm as marital property; (2) when it valued his capital account without deducting a $27,000 encumbrance on it; and (3) when it accepted wife's valuation of the parties' four joint bank accounts. Husband also argues that the trial court's division of the marital property was erroneous because its analysis of the statutory factors of Code § 20-107.3(E) was flawed. Wife contends that the trial court erred when it concluded that husband had no professional goodwill to be included in the marital property.

A.

CLASSIFICATION OF HUSBAND'S CAPITAL ACCOUNT

We hold that the trial court did not err when it declined to classify husband's capital account with his law firm as part marital and part separate property. Under Code § 20-107.3(A), a trial court must classify the property of parties to a divorce suit into one of three categories: separate, marital or part marital and part separate. Marital property includes "(ii) that part of any property classified as marital pursuant to subdivision A 3, (iii) all other property acquired by each party during the marriage which is not separate property as defined

above." Code § 20-107.3(A)(2). Property is presumed to be marital if it was "acquired by either spouse during the marriage, and before the last separation of the parties," unless evidence proves that the property is separate. Id.

Husband's capital account was marital property because the evidence conclusively proved that it was initially acquired during the marriage. This marital property had a value of $91,853 at the time the parties separated. However, on the date of the hearing, the value of this marital property had increased to $108,219.

Husband argues that the trial court should have classified the capital account as part marital and part separate property. He argues that the increase in the value of the capital account was caused by his post-separation contribution of $16,366 and that the trial court erred when it declined to classify this amount as his separate property. We disagree.

First, we disagree with husband's contention that wife had the burden of proving that the increase in the value of the capital account was marital property. Property acquired after the last separation is presumed to be separate property unless the party claiming otherwise proves that the property "was acquired while some vestige of the marital partnership continued or was acquired with marital assets." Dietz v. Dietz, 17 Va. App. 203, 211-12, 436 S.E.2d 463, 469 (1993). However, this rule does not apply to the capital account because it was initially

acquired <u>during</u> the marriage.

> All property acquired by either spouse during the marriage is presumed to be marital property in the absence of satisfactory evidence that it is separate property. The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption.

<u>Stroop v. Stroop</u>, 10 Va. App. 611, 614-15, 394 S.E.2d 861, 863 (1990) (citation omitted). Moreover, because the capital account is marital property, wife did not have the burden of proving that the increase in its value after the parties separated was also marital property. Rather, the valuation date of the capital account was the date of the hearing before the trial court because neither party moved for the use of an alternative valuation date. <u>See</u> Code § 20-107.3(A).

Instead, the classification of the post-separation contribution to the capital account is governed by the rules addressing commingled property. Under Code § 20-107.3(A)(3)(d), separate property becomes transmuted to marital property if the separate property is "commingled by [being contributed]" to marital property and the separate property loses its identity. The separate property retains its identity as separate property if it is "retraceable by a preponderance of evidence and was not a gift." <u>Id.</u> A corollary of Code § 20-107.3(A)(3)(d) is that marital property commingled with other marital property remains classified as such.

-4-

The trial court did not err when it did not classify the post-separation increase in the value of the capital account as separate property because the record does not establish that the increase in the capital account was due to the commingling of this marital asset with husband's own separate funds. The testimony of the controller of husband's law firm indicated that each partner at the firm is periodically required to contribute funds to the capital of the firm and that the aggregate amount of capital that each partner has contributed is referred to as his or her "capital account." Although husband made a contribution to his capital account after the parties' final separation, the record does not indicate the source of the funds used by husband to make this contribution. Husband offered no evidence showing that his post-separation contribution was made entirely with post-separation income or with other separate property. Because the record does not establish that this is a case in which separate property was commingled with marital property, the trial court's classification of the post-separation increase in the capital account as marital property was not erroneous.

B.

VALUATION OF HUSBAND'S CAPITAL ACCOUNT

We hold that the trial court did not err when it declined to deduct the $27,000 loan from the value of the capital account. When determining the value of marital property, the trial court is required to consider whether the property serves as security

for any valid debts of either party.  Trivett v. Trivett, 7 Va. App. 148, 151, 371 S.E.2d 560, 562 (1988).  If the trial court finds that marital property is encumbered by debt and that this debt was not deliberately "created in anticipation of divorce" in order to reduce the other spouse's monetary award by reducing or eliminating the value of such property, then "the amount of the indebtedness should be deducted from the unencumbered value of such property."  Id. at 152, 154-55, 371 S.E.2d at 562, 564.  As with cases involving the dissipation of assets, when an aggrieved spouse shows that marital assets were encumbered by debt at a time when the marriage is undergoing an irreconcilable breakdown, the burden is on the party charged with creating the encumbrance to prove that it was created and used for a proper purpose.  See Clements v. Clements, 10 Va. App. 580, 587, 397 S.E.2d 257, 261 (1990).

In this case, the trial court did not state any basis for its conclusion that the $27,000 loan should not be deducted from the value of husband's capital account.  However, "'we will start from the premise that the chancellor knows the law and properly applied it even when he or she does not mention [the applicable law].'"  Woolley v. Woolley, 3 Va. App. 337, 344-45, 349 S.E.2d 422, 426 (1986) (quoting Campolattaro v. Campolattaro, 66 Md.App. 68, 502 A.2d 1068 (1986)).

Thus, we presume that the trial court knew the law regarding the valuation of encumbered marital assets and concluded that

husband failed to meet his burden of persuasion that the $27,000 loan on his capital account was used for proper purposes. Based on the record before us, we cannot say that this was error. The evidence did prove that husband obtained this loan after the parties separated and that this loan was secured by his capital account. However, husband's proof that these funds were used solely for proper purposes amounted to little more than an undetailed list of expenses that he testified were paid for with the loan. He testified that he used the proceeds of the loan to pay for income taxes, medical expenses, including an uninsured hospitalization of wife costing $900, living expenses of wife and two children, and the college tuition of a daughter, which costs $1,600 per month. While husband testified that he incurred these expenses, he did not prove either their total amount or that they added up to $27,000. Moreover, no evidence established that husband had actually spent all of the $27,000 as of the date of the hearing.

> [T]he burden is always on the parties to present sufficient evidence to provide the basis on which a proper determination [of the value of marital property] can be made . . . . [R]eviewing courts cannot . . . reverse and remand . . . [equitable distribution] cases where the parties have had an adequate opportunity to introduce evidence but have failed to do so. Parties should not be allowed to benefit on review for their failure to introduce evidence at trial . . . .

Bowers v. Bowers, 4 Va. App. 610, 618, 359 S.E.2d 546, 550 (1987)

(citations omitted).  Based on this scant evidence, we cannot say that the trial court erred when it was not persuaded that the $27,000 loan was used entirely for proper purposes.

C.

VALUATION OF JOINT BANK ACCOUNTS

We hold that the trial court did not err when it valued the parties' four joint bank accounts on a date earlier than the equitable distribution hearing. The evidence established that these accounts were marital property. Wife offered evidence that the value of the joint accounts was at one time $2,500, $2,000.46, $630, and $2,630.46. Husband testified that the current balances of these accounts were $215, $0, $275, and $0. Because the evidence proved that husband had used the funds in these accounts after the parties separated, he had the burden of proving that these funds were spent for a proper purpose. See Clements, 10 Va. App. at 587, 397 S.E.2d at 261. If husband was unable to meet his burden of proof, the trial court was required "to value the property at a date other than the date of the evidentiary hearing . . . ." Id.

We cannot say that the trial court erred when it concluded that husband failed to prove that he used the funds in these accounts for proper purposes. Husband's proof that he used the funds in the joint bank accounts for proper purposes consisted of his testimony that a portion of one of the accounts "was used to pay down life insurance premiums" and his sweeping statement that "generally" the remaining funds were used to pay "regular expenses of the marriage." However, husband offered no evidence proving how much of these funds were actually used to pay his

–9–

life insurance premiums or any other marital expense. His lawyer's only question on this subject directed husband <u>not</u> to account for his use of these funds. The trial court was within its discretion not to be persuaded by husband's sketchy, vague evidence that he used the funds in the joint bank accounts for proper purposes.

## D.

### HUSBAND'S PROFESSIONAL GOODWILL

We hold that the trial court did not err when it concluded that husband had no professional goodwill. On appeal, the trial court's decision regarding goodwill "will not be disturbed if it appears that the court made a reasonable approximation of the goodwill value, if any, of the professional practice based on competent evidence and the use of a sound method supported by that evidence." <u>Russell v. Russell</u>, 11 Va. App. 411, 417, 399 S.E.2d 166, 169 (1990). The expert testimony on this issue conflicted, and the trial court's conclusion was supported by credible evidence.

## E.

### ANALYSIS OF FACTORS IN CODE § 20-107.3(E)

Husband contends that the division of the marital property by the trial court was erroneous because the trial court incorrectly applied the factors of Code § 20-107.3(E). Specifically, husband contends that the trial court failed to consider the negative impact of wife's alcoholic behavior on the

marital estate and improperly considered punishment as a factor in its analysis.  We disagree.

> Equitable distribution is predicated upon the philosophy that marriage represents an economic partnership requiring that upon dissolution each partner should receive a fair portion of the property accumulated during the marriage.  Therefore, circumstances that affect the partnership's economic condition are factors that must be considered for purposes of our equitable distribution scheme.

Aster v. Gross, 7 Va. App. 1, 6, 371 S.E.2d 833, 836 (1988) (citation omitted).

> In any equitable distribution proceeding, the trial judge must consider all the specifically enumerated factors in exercising his or her discretion, and ". . . it is reversible error for the trial judge to fail" to do so.

Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 577 (1992) (citation omitted).  "The appropriate consideration of the factors entails more than a mere recitation in the record or decree that all the statutory factors have been considered or reviewed."  Id. at 405, 424 S.E.2d at 578.  However, the trial court is not required "to quantify the weight given to each [factor], nor is it required to weigh each factor equally."  Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991).  Instead, "[the trial court's] considerations must be supported by the evidence."  Id.

Husband contends that the trial court gave no consideration

to the impact of wife's alcoholism on the marital estate.  We disagree.  Although we agree with husband that the trial court was required to consider wife's alcoholism because it was a circumstance that affected the economic condition of the marriage, see Aster, 7 Va. App. at 6, 371 S.E.2d at 836, the record indicates that the trial court was aware of and gave consideration to the impact of wife's alcoholic behavior on the marital estate.  Husband argued in both his closing argument at the hearing and in a post-hearing memorandum that wife's alcoholic behavior had negatively impacted the marital property and the well-being of the family and that wife's portion of the marital property should not exceed 25%.  In its opinion letter, the trial court stated:

> I have considered [husband's] position with regard to [wife's] alcohol addiction . . . .  I feel that if I adopted [husband's] position with regard to a property division I would be unnecessarily punishing [wife] for a disease that she has not learned to cope with despite everyone's efforts.

Because the trial court stated that it considered husband's arguments, which expressly addressed the impact of wife's alcoholic behavior on the marital estate, we cannot say that the trial court failed to consider this circumstance when it fashioned its award.

Husband also argues that the trial court's reference to "punishment" in its opinion letter indicates that it improperly considered punishing the parties with its award.  We disagree.

-12-

Husband is correct that "[e]quitable distribution is not a vehicle to punish behavior," and a trial court's consideration of marital fault is limited to its negative impact on either the family, the other spouse or the marital property.  See O'Loughlin v. O'Loughlin, 20 Va. App. 522, 526-27, 458 S.E.2d 323, 325 (1995); Aster, 7 Va. App. at 5-6, 371 S.E.2d at 836.  However, when read in context with husband's memorandum, the trial court's reference to punishment is nothing more than a response to husband's request for a division that would award only 25% of all the marital property to wife and 75% to husband.  By stating that husband's proposed division would "unnecessarily punish" wife, the trial court was indicating its awareness that it was prohibited by Code § 20-107.3 from fashioning an award to penalize wife for her behavior.  The trial court's comments indicate that it intended its division to be based solely on the ten factors of Code § 20-107.3 and that its consideration of wife's alcoholism was limited to the actual impact it had on the marital estate and the family.

Finally, we hold that the trial court's application of the statutory factors of Code § 20-107.3 was not erroneous.
> "[I]n reviewing an equitable distribution award, we rely heavily on the trial judge's discretion in weighing the particular circumstances of each case.  Only under exceptional circumstances will we interfere with the exercise of the trial judge's discretion."

Gamble v. Gamble, 14 Va. App. 558, 573, 421 S.E.2d 635, 644

(1992) (quoting <u>Aster</u>, 7 Va. App. at 8, 371 S.E.2d at 837). In its opinion letter, the trial court stated that it "considered all of the factors listed in Code §20-107.3" and outlined the circumstances of the marriage that it considered, all of which were relevant to equitable distribution and supported by credible evidence in the record. Based on these findings, the trial court divided the nonbusiness-related marital property "50-50" and husband's law firm accounts "60-40" in favor of husband. Overall, because the vast majority of the marital property was related to husband's various law firm accounts, husband was awarded roughly 60% of <u>all</u> of the marital property while wife was awarded roughly 40%. Because the trial court gave consideration to all of the statutory factors and factual circumstances relevant to making an award under Code § 20-107.3, we cannot say that its award was an abuse of discretion.

II.

SPOUSAL SUPPORT

We disagree with husband's contention that the amount of support awarded by the trial court was excessive and an abuse of discretion. When spouses are divorced, "'the law imposes upon the [supporting spouse] the duty, within the limits of [his or her] financial ability, to maintain [his or her] former [spouse] according to the station in life to which [he or she] was accustomed during the marriage.'" <u>Via v. Via</u>, 14 Va. App. 868, 870, 419 S.E.2d 431, 433 (1991) (quoting <u>Klotz v. Klotz</u>, 203 Va.

-14-

677, 680, 127 S.E.2d 104, 106 (1962)).  "In fixing the amount of the spousal support award, a review of all of the factors contained in Code § 20-107.1 is mandatory, and the amount awarded must be fair and just under all of the circumstances."  Gamble, 14 Va. App. at 574, 421 S.E.2d at 644.  "When the record discloses that the trial court considered all of the statutory factors, the court's ruling will not be disturbed on appeal unless there has been a clear abuse of discretion."  Id.

In this case, the trial court awarded wife spousal support of $7,500 per month.  However, neither the trial court's opinion letter nor the final decree quantifies how the trial court arrived at $7,500 as the amount of spousal support.  Instead, the trial court stated only that the award was "[b]ased on [wife's] needs and [husband's] ability to pay."  Thus, we must examine the record to see if the evidence supports the trial court's award. See Gibson v. Gibson, 5 Va. App. 426, 435, 364 S.E.2d 518, 523 (1988).

We hold that the amount of spousal support awarded by the trial court is supported by the record and is fair and just under the circumstances of this case.  The record indicates that husband is a successful attorney and that his average monthly income, after deducting taxes, for the three years preceding the spousal support hearing was $14,626.80.  The record indicates that wife has no current income from employment, has not worked since the late 1960s and has a high school education.  The length

of the marriage was 26 years, during which the parties established a high standard of living. Both parties are fifty years old. With the exception of a bad back, husband is in good physical and mental health. Wife suffers from the disease of alcoholism. During the marriage, husband made nearly all of the financial contributions to the family. Wife made significant non-monetary contributions to the family during the first seven or eight years of the marriage until her addiction to alcohol worsened. During the remaining years of the marriage, wife's alcoholic behavior had a substantial negative impact on the well-being of the family. In addition, the bulk of wife's immediate disbursement from the equitable distribution award was in the form of non-liquid assets such as the marital home and an automobile. The record indicates that husband's monthly expenses, exclusive of amounts expended on his children, totaled $6,871. Wife's monthly expenses were at least $7,500. Considering that husband's monthly after-tax income is $14,626.80 and that his personal monthly expenses are $6,871, the trial court's award leaves husband with $7,755.80 to pay his $7,500 monthly support payment. In light of husband's earning capacity and current ability to pay, the standard of living established during this lengthy marriage, and considering wife's medical problems, financial needs, and prospects for employment, we cannot say that the amount of the trial court's spousal support award was an abuse of discretion.

The dissent contends that wife's estimation of her monthly expenses was "grossly overinflated" and that the trial court failed to consider the estimate's flaws in its determination of wife's monthly expenses. Although we agree that both husband's testimony and husband's lawyer's cross-examination of wife revealed some overstatements in wife's estimation of her expenses, we disagree that the trial court did not account for these inaccuracies in its determination.

On her list of expenses, wife estimated that her monthly expenses totaled $10,995. The trial court discounted this estimation by $3,495 when it awarded wife spousal support of $7,500. Evidence introduced by husband established that wife overestimated her mortgage payment by $400, her monthly insurance expense by $305, and mistakenly listed that her house had a monthly utility expense for gas of $200. During his cross-examination of wife, husband's lawyer also impeached, but did not disprove, the accuracy of wife's estimation of her monthly expenses for property taxes, electricity, water/sewer, cable television, transportation, life insurance, eyeglasses, hospitalization, gift giving and vacations. However, even when using husband's estimations for all of the figures that his lawyer challenged on cross-examination, except for those related to transportation,[1] and after excluding wife's estimation of

_____
[1]We disagree with both husband's and the dissent's contention that wife was overreaching when she claimed a monthly expense of $500 under the "automobile" category of her expense sheet and a monthly expense of $500 for automobile insurance

-17-

expenses related to the children, wife's total monthly expenses were at least $6,585. Thus, contrary to the assertion by the dissent, the record indicates that the trial court did discount wife's estimation of her expenses to account for all of its actual overstatements and for at least some of its questionable estimates. Moreover, because the portions of wife's estimation of her monthly expenses that were not proven to be overstated totaled at least $7,500, we cannot say that the trial court's determination of wife's monthly expenses was erroneous.

## III.

### ATTORNEY FEES

Husband challenges the trial court's award of attorney fees for wife's representation in both a post-separation criminal proceeding and the divorce proceeding.

### A.

### POST-SEPARATION CRIMINAL PROCEEDING

We hold that the trial court erred when it ordered husband to pay wife's attorney fee that arose from her post-separation charge of driving while intoxicated. First, the trial court had

---

because she is legally prohibited from driving for at least three more years. First, the "automobile" expense category on wife's expense sheet includes a subcategory for "other transportation." Wife's estimation of a $500 monthly expense for this category was supported by her testimony that she does not live on a bus line and relies primarily on cabs for her daily transportation. In addition, even though wife cannot drive, we cannot say that her claim that she incurred a monthly expense for automobile insurance was unwarranted in light of the fact that the trial court awarded her an automobile in its equitable distribution of the marital property.

no authority under Code § 20-79(b) to award attorney fees relating to wife's post-separation criminal proceeding. Although Code § 20-79(b) authorizes a trial court to award "counsel fees . . . if in the judgment of the court . . . the foregoing should be so decreed," this statute is expressly limited to counsel fees "[i]n any suit for divorce." In addition, the trial court could not have apportioned this debt as a marital debt under Code § 20-107.3(C). Code § 20-107.3(C) empowers a trial court "to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E." (Emphasis added.) The record is devoid of any evidence regarding the dates on which wife's attorney provided legal representation and advice relating to her criminal defense. Although the record establishes that wife was arrested for driving while intoxicated and bailed out of jail in August, 1994, the evidence does not support a finding that wife's legal expenses were incurred prior to January 3, 1995, the date of husband's divorce from wife.

B.

DIVORCE PROCEEDING

We disagree with husband's contention that the trial court abused its discretion when it awarded wife attorney fees for the divorce proceeding. Code § 20-79(b) empowers a trial court hearing a suit for divorce to award attorney fees "if in the judgment of the court . . . [an award] . . . should be so

decreed."  "An award of attorney fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  <u>Graves v. Graves</u>, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).  Based on all of the circumstances and equities of this case, including the length of the marriage, wife's needs, and husband's resources, we cannot say that the trial court abused its discretion when it ordered husband to pay $10,000 of wife's attorney fee of $39,702.88 for the divorce proceeding.

IV.

CHILD SUPPORT

Wife contends that this case should be remanded because she requested the trial court to determine child support and the trial court did not address this issue in its decree.  We agree.  Both parties requested the trial court to make a determination regarding child support.  The trial court failed to decide this issue and failed to state any rationale for this inaction.  In our opinion, the trial court abuses its discretion when it fails to decide whether or not to award child support in its final decree when this issue is presented for adjudication by one of the parties.  Cf. Conway v. Conway, 10 Va. App. 653, 659, 395 S.E.2d 464, 467 (1990) (holding that the trial court abused its discretion when it failed to set forth a rationale for its child support award).

V.

CONCLUSION

In summary, we affirm the trial court's awards of equitable distribution, spousal support and attorney fees for the divorce proceeding.  We reverse the trial court's award of attorney fees arising from wife's post-separation charge of driving while intoxicated.  Finally, we remand the issue of child support to the trial court to determine if an award is justified in this case and, if so, the amount of such award.

Affirmed in part, reversed in part, and remanded.

-21-

Benton, J., concurring and dissenting.

I concur in Parts I(C), I(D), III, and IV.  I dissent, however, from Parts I(A), I(B), I(E), and II.

### A.

I disagree with the majority that the husband's capital account was proved to be wholly marital.  The evidence proved that as of the date of separation the husband's capital account was worth $91,853, less a loan of $27,000.  The husband's post-separation contribution was $16,366.

> Generally, property acquired by one partner after the last separation when "at least one of the parties intends that the separation be permanent" is not "acquired . . . during the marriage" or as part of the marital partnership and will not be marital property, unless it was obtained, at least in part, with marital funds.  Property acquired by one partner totally separate and apart from the marital partnership does not imbue the other partner or spouse with rights and equities in such property.  Where partnership efforts have contributed nothing to the acquisition or maintenance or preservation of the property, no basis exists for its being classified as a marital asset.

> \*    \*    \*    \*    \*    \*    \*

> While Code § 20-107.3(A)(2) does not expressly state that property acquired after the last separation shall be presumed to be separate property, it necessarily follows that if the marriage partnership is presumed to have ended as of the date of the last permanent separation, in order for property acquired after that date to be classified as marital, the party so claiming will have the burden of proving, without the benefit of a presumption, that it was acquired while some vestige of the marital partnership continued or was acquired with marital assets.  Thus,

-22-

> if the party with the burden of proving that
> the property is marital fails in his or her
> burden, then necessarily, the property
> acquired after the marital partnership ended
> is separate property.

Dietz v. Dietz, 17 Va. App. 203, 210-12, 436 S.E.2d 463, 468-69 (1993) (citations omitted).  Because the wife failed to prove that the husband's post-separation contribution to his capital account was made with marital funds, the trial judge erred in holding that it was not separate property.

### B.

I would also hold that the trial judge erred in ruling that the $27,000 loan that husband made from the capital account was not a proper marital expenditure.  The trial judge gave no explanation for his decision.

The husband testified that those funds were expended for marital purposes in 1995 when his salary was reduced.  He used the loan proceeds to pay taxes, expenses for his operation, $900 for his wife's uninsured hospitalization, expenses for meningitis treatment for the two youngest children, and tuition of $1,600 per month for a third child who was in college.  The wife offered no evidence to dispute that these funds were used for those purposes.  Thus, I would hold that the husband met his burden of proving that the funds were used for proper purposes.

### C.

I disagree with the majority's conclusion that the trial judge properly considered the impact of the wife's alcoholism on

-23-

the marital estate when rendering its equitable distribution award.  In a memorandum submitted to the trial judge, the husband argued that (1) the wife's alcoholism directly affected the monetary value of the marital estate and, thus, could be considered pursuant to Aster v. Gross, 7 Va. App. 1, 371 S.E.2d 833 (1988) (holding that marital conduct cannot be used to "punish" the offending spouse in the equitable distribution award; such conduct can only be considered to the extent that it affects the economic condition of the marital estate), and (2) the wife's alcoholism negatively impacted her non-monetary contributions, and thus it could be considered pursuant to O'Loughlin v. O'Loughlin, 20 Va. App. 522, 458 S.E.2d 323 (1995) (holding that marital conduct could be considered in determining an equitable distribution award if the evidence shows that the conduct hindered the non-monetary contributions of a spouse).

The husband requested the trial judge to consider the wife's long-term alcoholism as a factor in making the equitable distribution award.  He argued that her long-term alcoholism had a direct bearing on her significant lack of contribution to the acquisition and maintenance of the marital property.  In particular, the husband argued that the wife's alcoholism "is relevant to both the monetary and non-monetary contribution factors because it negatively impacted . . . both."  The husband argued that when proper consideration was given to the impact of the wife's alcoholism, the wife should receive only 25% of the

marital estate.

The trial judge issued an opinion letter in which he found that "[t]he tragedy of the marriage is that the [wife] is an acknowledged alcoholic." The trial judge nonetheless ruled as follows:

> I have considered [husband's] position with regard to [wife's] alcohol addiction and how it has affected the marriage and the children. . . .
>
> I feel that if I adopted [husband's] position with regard to a property division I would be unnecessarily punishing [wife] for a disease that she has not learned to cope with despite everyone's efforts.

(Emphasis added.)

That ruling demonstrates that the trial judge misperceived the husband's argument regarding the impact of the wife's alcoholism on the marital estate. I disagree with the majority's conclusion that the trial judge subsequently factored in wife's addiction when determining the equitable distribution award. The judge's opinion reveals that the judge concluded that he could not factor in the wife's alcoholism because to do so would be to punish her for a disease she was unable to overcome. The trial judge's ruling misperceived the argument and the purpose of Code § 20-107.3.

"The purpose of Code § 20-107.3 is to divide fairly the value of the marital assets acquired by the parties during marriage with due regard for both their monetary and nonmonetary contributions to the acquisition and maintenance of the property

and to the marriage."  O'Loughlin, 20 Va. App. at 524, 458 S.E.2d at 324.  The reason to consider the wife's alcoholism is not to penalize her but, rather, to recognize the additional burden placed on the husband.  The wife's alcoholism is a factor that tends to make the husband's non-monetary contributions more significant.  Accord Crowe v. Crowe, 602 So.2d 441 (Ala. Civ. App. 1992); In re Marriage of Bulanda, 451 N.W.2d 15, 17 (Iowa Ct. App. 1989).

After O'Loughlin, it is clear that a trial judge can consider marital conduct as it impacts a spouse's non-monetary contributions to the well-being of the family.  See 20 Va. App. at 528, 458 S.E.2d at 326.  It is also clear that if the conduct in fact did affect a spouse's non-monetary contributions, consideration of the conduct does not constitute "punishing" the spouse for that conduct as prescribed in Aster.  See O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326.  Moreover, giving consideration to the wife's alcoholism does not depend upon a finding that the alcoholism constituted marital fault. O'Loughlin could not be clearer in ruling that any behavior that negatively impacts the non-monetary contributions of one spouse to the marriage can be considered.  See 20 Va. App. at 528, 458 S.E.2d at 326 ("[O]ur ruling in Aster did not establish that the negative impact of marital fault or other behavior could not be considered in light of the other factors, such as the couple's nonmonetary contributions, under Code § 20-107.3(E).") (emphasis

added).

The husband argued the relevance of the wife's alcoholism to the factors of Code § 20-107.3(E). The trial judge implicitly ruled that the evidence was not relevant to those factors because consideration of that issue would be punitive. The question of alcoholism goes not to punishment or fault but, rather, to "determining whose labor or negatively productive conduct was responsible for creating or dissipating . . . marital assets." In re Marriage of Clark, 538 P.2d 145, 147 (Wash. Ct. App. 1975) (footnote omitted). One spouse's addiction to alcohol over a long period of the marriage, which places a great burden on the other spouse, is a factor that justifies awarding the other spouse a substantial portion of the marital assets. See Crowe, 602 So.2d at 443; Carpenter v. Carpenter, 573 N.E.2d 698, 701 (Ohio Ct. App. 1988); Handrahan v. Handrahan, 547 N.E.2d 1141, 1142-43 (Mass. Ct. App. 1989); In re Marriage of Clark, 801 S.W.2d 496, 500 (Mo. Ct. App. 1990). Thus, a trial judge errs when he fails to consider the economic impact of a spouse's alcoholism on the acquisition of the property of the marriage. See O'Loughlin, 20 Va. App. at 528, 458 S.E.2d at 326; see also Peirson v. Calhoun, 417 S.E.2d 604, 606 (S.C. Ct. App. 1992).

The evidence proved that the wife was not employed during the marriage. She made no monetary contribution to the acquisition or maintenance of the marital property.

The evidence also proved that the wife's non-monetary

contributions to the well-being of the family during the last eighteen years of the marriage were negligible. The wife is an alcoholic, who was in confined treatment on three occasions and was jailed three times as a result of her alcoholism. Tragically, she had serious difficulty with alcohol for eighteen of the twenty-six years that the parties were married. The record overwhelmingly establishes that her alcoholism negatively affected the home lives of her husband and her children during a substantial portion of the marriage. The evidence also proved that the wife's alcoholism on occasion negatively affected the husband's career and his ability to develop business opportunities. Thus, the evidence tends to prove that the wife's condition had a direct bearing on both the well-being of the family and the ability of the parties to accumulate and maintain assets during the marriage.

Simply put, the trial judge's emphasis on fault failed to address the relevant issue. Evidence proving that "[d]ue to her illness and the attendant hospitalization [a spouse was] able to function only sporadically," establishes factors that are properly used to make an unequal property award in favor of the other spouse. See In re Marriage of Milsten, 598 P.2d 1268, 1269 (Or. Ct. App. 1979).

The record raises substantial doubt that the trial judge properly applied the equitable distribution factors set forth in Code § 20-107.3. The principle is long standing that a trial

judge's misapplication of one of the statutory factors is ground for reversal on appeal.  See Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989).  Thus, I would reverse the equitable distribution decision and remand that issue to the trial judge for reconsideration.

D.

I also would reverse the spousal support award and remand for reconsideration.  The wife listed her total _monthly_ expenses as $10,995.  However, her own testimony proved that those expenses were grossly overinflated.  For example, she listed $1,200 for gifts, $200 for a property tax that was already accounted for in the mortgage payment, $500 for telephone bills, $1,000 for automobile expenses and insurance even though she is an habitual offender and is barred from driving, $500 for health insurance that was proved to be $195, $300 for eyeglasses, $850 for vacations, and $200 for gas utilities even though her residence has no such utility.

I find no evidence in the record that in making the spousal support award the trial judge factored in these and other grossly inflated items that the wife listed as monthly expenses.  I believe that when these monthly expenses and others are adjusted, the evidence does not support an alimony award of $7,500 per month.

For these reasons, I would also reverse the spousal support award and remand for reconsideration.